May it please the Court, Charles Delario for the appellant. There are many issues in this case and only 15 minutes to talk about them, so unless the Court has some questions about the jurisdiction question, I'll skip to the merits. There's no question, then, that the bank committed a willful violation of the state. This was the finding of both the bankruptcy court and the district court. But the bankruptcy court erred because, as a matter of state law, the Dawsons held an equitable interest in the foreclosed property on the date of the foreclosure that was protected by the 362 stay. The bank has advanced some new arguments for the first time in its brief on appeal in this case, which we would urge the Court not to consider. Namely, that because of the timing of the exchange of documents between the Dixons, the Jamesons, and the Dawsons, that there was somehow some gap during which time the Dawsons were not entitled to the property. But at all times, they maintained an equitable interest in the property. They've been dealing with this bank for something like 10 years at the time of the events in question. Eight years, excuse me. They have paid the bank $32,000 on account of this loan in 1995. They paid the bank another $7,000 on the loan again in 1997 as part of a cure agreement to a subsequent Chapter 13. And only at the bankruptcy court's instance was this question about, oh, by the way, did the Dawsons really own the property? Did they claim an equitable interest in the property at the time of foreclosure? I'm sorry. Tell me foreclosure. Tell me how that worked. How the foreclosure worked, Your Honor? Yes, sir. The bank's foreclosure? The Dixons' foreclosure? The gentleman who foreclosed and then turned the property over to a friend of the Dawsons and then put the Dawsons into possession. The Dawsons were always in possession. Okay. But I'm saying they were in default to the bank. Well, that's what the bankruptcy court found, and we haven't challenged that on appeal. How does that work? In other words, they are a junior to the senior holder by the bank. And when they foreclose, who's entitled to the proceeds? Well, when they foreclose. If I have the first mortgage and you have the second mortgage, and the second mortgage forecloses, aren't I as the senior leaner entitled to that money? Well, there wasn't any money. That's the point. And typically there isn't any money, and you're lean, the senior leaner stays in place. What was the purpose of the foreclosure? It eliminates the junior encumbrances that Mr. Dawson may have had. I believe he had a judgment lean against him. All right. And then he took and turned the property over to somebody else or some kind of a document, and there was no consideration for that document. Right? Nobody exchanged hands. And that person then put the Dawsons back in on the property. And they foreclosed the bank from collecting any money. No, they didn't foreclose the bank from collecting money. But they do it. But they didn't affect the bank's interest at all. California is a priority of time, State. The bank was in first position all along. Whatever the junior encumbrances did vis-à-vis themselves never affected the bank's lean. So, in other words, anybody can come along and foreclose, and the senior lean holder doesn't participate? The senior lean holder participates to the extent that it's entitled to get its money when it comes due, and it's entitled to foreclose if it's not, not. Were they delinquent? The Dawsons delinquent to the bank? Yes. I mean, it was kind of. If they were delinquent, why wouldn't they have collected the money when the foreclosure took place? Because they were the they were first. They had the priority. But there was no money. That's the point. So what did they foreclose for? What was the purpose of the foreclosure? I tried to just explain it to you. The purpose of the foreclosure was to clear up existing encumbrances that were junior to the Dixon's second deed of trust. If I'm saying it wrong, you correct me. Was it for the purpose of putting the Dawsons back in the property? No, the Dawsons never left the property. That's the point. They would have left the property had the senior lean holder foreclosed, and they prevented them from doing that. Because they turned the property over to a third party, who in turn gave it to the Dawsons, and they were close friends. If I'm saying it wrong, you correct me. All right. I'm getting an uncomfortable inference from Your Honor's remarks to the fact that there's somehow some nefariousness on the part of the Dawsons here. I'm asking you to explain it to me. Okay. Because this is something you're expressing a concern that shouldn't be one, in my opinion. Then tell me why that shouldn't be a concern of mine. If I had a blackboard here, I would blackboard it for you, but that's my old trial lawyer days, and I know we don't do that here. Try without a blackboard. I think you might be able to reach me. All right. The bank held a first mortgage as of 1987 or 1988. Sometime in 1992, the Dawsons borrowed some money against the property. The Dixons ultimately acquired that loan and that deed of trust, which at all times was junior to the bank. When the Dixons foreclosed, they made a credit bid. In other words, they said in exchange for getting the property, and this is common in California practice. Instead of getting the property, getting money, we're going to take the property and our debt goes away. There is no money changes hands. Our debt goes away. Now, the property, now what happens is the Dixons have a right to go in and evict the Dixons. But answer, why did they need that third party in there? Why did they have to make a deal with a third party? With the Jamisons? Yes, sir. In other words, if they owe them money and they took the property to satisfy that debt, why did they need a third party who had nothing to do with it at all to make an agreement to put the Dawsons back in? Well, the record is not clear on this point, but the presumption is that the Dixons received some consideration from the Jamisons in exchange for giving the Jamisons title to the property. And why did they have to do that if they wanted to help the Dawsons who actually owe the money? They were extinguishing a debt. Why did you need a third party? That's the way they, maybe because it was the Jamisons who were helping the Dawsons by paying the Dixons off in some way to put the, and the property was the security for the debt, right? The property was the security for the debt between the Dawsons and the Dixons. I'm going to call them the Dixons, although they weren't the original lenders. So once you did that, what did you need the Jamisons for? The Jamisons, it's not a question of needing. I mean, this is the problem. The Dixons were free to say, okay, we now have this property. The property is, in fact, severely underwater because the bank in the first position is claiming more money than the property is probably worth. And so the Dixons are saying, gee, I'd be happy to unload this. It has some interest. And here are the Jamisons. They're friends of the Dawsons. They're willing to give me something that satisfies me. I mean, this wasn't an issue that was litigated in the bankruptcy court. There's no record developed on this point. Counsel, it seems to me that regardless of what might happen here in this proceeding, there's bound to be more proceedings, it sounds like. I mean, there have to be further proceedings. Of course. And I'm wondering whether the parties have made any attempt to settle this matter or to make use of the mediation services of the circuit. Yes. Do you think it would be useful to make further use of the mediation services? Well, I'd ask you to direct that to counsel when he's up here, Your Honor. I will. We participated. We were willing to participate. There was not a meaningful offer made, in our opinion. Okay. I didn't expect this to come up this morning either. You don't need to say anything further. That's fine. It's our hope, and we think that this Court should step in. And because before there's any further fact-finding, before any more money is spent, the bankruptcy court, who ultimately has to make any further factual determinations in the case, needs this Court's direction, because we think they've got it. Between the bankruptcy court and the district court, they've got it sideways. They've got it sideways about do you think to sort of go back to the district court or the bankruptcy court to sort it all out? No, because until you tell the bankruptcy court what rules it's supposed to apply, they're not going to be able to do that. The principal rule at stake here, and it's a question of first impression in this circuit, is whether or not Mr. Dawson's entitled to recover his emotional distress damages from the stay that was proven, namely the stay caused by the unlawful detainment proceedings. We have a Seventh Circuit district court opinion that was essentially affirmed by the Seventh Circuit. There's, I now learned since, as I prepared for this, a First Circuit opinion that goes the other way, and there's a BAP opinion, which I called to your attention in my Rule 28 letter last week, that that's a split decision that means that until we know what this Court thinks ought to happen, fact-finding is premature. It would really be a disservice to the litigants, in my opinion, to simply say, well Was it premature to take an appeal in this case, do you think? No, because I took the appeal because of the reasons I just explained to you, namely that we're contending that a number of things, a number of things here need to be decided by this Court. Namely, what is the standard for compensable damages under Section 362H violations? May the district court or may the bankruptcy court use this 1 out of 20 proceeding in awarding attorney's fees when we now know that doesn't comply to any Ninth Circuit precedent about Lodestar or any of the other things. The only authority I've gained from that is, again, in that Stinson opinion from the BAP that I cited, too. Apparently, there's a Fifth Circuit opinion that approves that procedure. It's cited in Stinson. It's called Coxon. If you look at Coxon, as I did, you'll see that there's just a single paragraph about it. I've never seen that kind of approach to attorney fee award. And frankly, the attorney fee award in this case was in the nature of sending a message to counsel, you shouldn't have brought this case, because nobody, even if you accept the bankruptcy court's premise that all these other issues shouldn't have been litigated, we had 12 hours just doing the damages question. We had a summary judgment motion directed to this. We had depositions. We had to prepare a complaint. She awarded essentially 10 hours of time for the entire case. And we submit that's an abuse of discretion. In fact, we submit it's clear error because it violated the applicable principles to be applied in making attorney fee awards. I'm running low on time, and I'd like to save a few moments of what's left. So unless the Court has any more questions at this juncture, I'll turn it over to Mr. Malcolm. Thank you. Thank you. Good morning. I would like to first pay a compliment to opposing counsel to say that I have enjoyed his company on this five-year journey, and I'm as anxious as he is to get this over with now. And not only have we litigated on these issues for five years, but Washington Mutual Bank has had to deal with the Dawsons for over 11 years during the course of their five bankruptcy cases. And that is a long time, particularly in individual cases. But I felt it was necessary to bring the Lakeshore Village case to your attention because I thought it was somewhat parallel to this. In that case, the district court remanded the bankruptcy court's decision on an is the section meant for compensation of estate professionals. And likewise, we have the kind of situation here where the district court has remanded it to the bankruptcy court for determination of damages and attorney's fees. So there is somewhat of a parallel. But like I said, I'm anxious to get this over with now. Well, counsel, that is a perfect segue, and I will ask you the same question I asked opposing counsel, and that is whether, in your view, it would be potentially useful for the parties to make use of the mediation services in the circuit. You know, I'm never opposed to that, and I know our client would not be opposed to it because it's very reasonable. We did participate in the Northern District Mediation Program, and we had, I think it was maybe half a day worth of mediation in front of one of the judges in Oakland, and that really didn't go anywhere. So I'm not sure. I think our sticking point really is on the attorney fee issue, candidly. So I don't know that it would be meaningful, but I'm certainly open to it. Okay. But I do think that the circuit can conclude this litigation now by affirming the bankruptcy court on all aspects of its ruling. I certainly think the bankruptcy court did not err in regards to the Jamison agreement, that is an operative document, and I would like to make something very clear here in regards to the comment made in the appellants. Counsel, before you do that, I have a sort of a procedural question here. You have the bankruptcy court affirmed in toto, but the district court reversed a portion of what the bankruptcy court had done, and now you want us to reverse the district court in turn, in part, and return back to what the bankruptcy court did. You did not file a cross appeal. Right. So why are you entitled to have us consider overturning something that the district court has done without having filed a cross appeal? Well, the issue, the district court's decision on that issue was appealed by the Dawsons, and they've argued that issue in the brief. But you're asking for us to reverse the district court in an area in which they are not asking for the district court to be reversed, and that would give you an advantage in litigation. So weren't you obliged to file a cross appeal in order to have us consider your view of where the district court went wrong? Your Honor, I'm not so sure that I was. This is an issue that should be reviewed de novo anyway, and frankly I don't think it makes any difference based on this record. We review de novo the issues that are properly brought to us. Right. But do we review everything de novo even if it's not the subject of an appeal or a cross appeal? Well, that's a good question. I don't know if the circuit would, well, it's the same thing that happened in the district court, frankly, because the issue was not raised in connection with the appeal, as I recall, from the bankruptcy court to the district court in regards to the basis upon which the district court reversed. It was the bankruptcy court on the Jamison agreement. But, you know, I'm not sure, and I don't think it really makes any difference on the record that is before the bankruptcy court. Well, I guess you're entitled to, as an aptly, you're entitled to ask us to affirm the district court on any ground that was discussed below. But my question to you is aren't you asking us to reverse a portion of what the district court did? Well, you know, I'm really not. I'm okay either way. I'm okay, obviously, with the bankruptcy court's interpretation of the Jamison agreement, but I'm also okay with the district court's interpretation of it as a marketing contract. Although I think it's wrong, I'm okay with it because I think we end up in the same position. And I know that appellants have made a real issue about our motion for summary judgment and how aggressive we appeared to be in the underlying litigation. That's not true. We weren't aggressive. We're trying to keep costs to a minimum. And for that reason, we did not file a cross-appeal primarily because I don't think it makes any difference based on the record before this Court whether it's a marketing contract or an option. It just doesn't make a difference based on the record. So I'm not concerned about it either way because I'm confident, as appellant has commented, that the bankruptcy court is going to make the right decision, whatever framework it has, based on this record. This is basically a state violation case. Even though there are a lot of other issues litigated, this is basically a state violation case. And if we step back for a moment and look at it, look at this record, understanding that, this is not an egregious state violation case at all. And I'll address that in a moment. So to answer your question, I don't think it really makes any difference either way, whether it's an option agreement or a marketing contract. The reason I don't think it makes a difference is, as I said, based on this record. The record before the bankruptcy court included the fact that the Dawsons had filed five bankruptcy cases over the course of a five-year period, that the junior lien holder foreclosed and extinguished whatever interest the Dawsons might have had as of the date of the foreclosure sale under California law. The appellants admit that they did not comply with the conditions of the Jamison agreement, whether we call that an option or a marketing contract. They didn't comply within the 30-day period as called for in the agreement. You'll note that in that agreement, it doesn't require the Jamisons to do anything except to transfer the grant deed title to the property. Upon satisfaction of those conditions within that 30-day period. And, you know, an interesting thing that hasn't been discussed is what happens if they hadn't done that within the 30-day period? Could the Jamisons then have sold the property to somebody else without violating the automatic stay of Mr. Dawson's bankruptcy case? And I think the answer is yes, because there's no interest there to protect. And that's what the district court was saying, because it was extinguished on the 30th day. I don't think any of the cases cited by the appellants are applicable here to change that. So we have the fact that the generally null and foreclosed, that the conditions of the agreement were not timely satisfied, that the unlawful detainer action was remedied almost immediately. And what I mean by that is the day that the complaint for the unlawful detainer action was served, the debtor's lawyer, who was already hired, called the U.D. lawyer and told the U.D. lawyer about the bankruptcy case. He said he would look into it immediately. It was dismissed within two weeks. Mr. Dawson didn't have to take any formal action to resurrect that. And a very significant fact is that all stay violations, and there are really only two, is an unlawful detainer action and it's a foreclosure sale potentially, were remedied two years before this lawsuit was filed. Now, in the court below, I filed a motion for summary judgment, which was denied because the court found that the issues were not articulated clearly enough. So she didn't know how to rule on the motion. She denied it. But in that motion, I argued the Siegel case. It's a Ninth Circuit case which stands for the proposition that a prior case can be raised judicata as to any potential claims in the future. I want to make it really clear. I'm not at all suggesting that the Siegel case should apply here. My only point is that this lawsuit was filed two years after, more than two years after the last stay violation issue was resolved, remedied. We can look all day long for bankruptcy cases throughout the entire country, and I don't think we'll find one case where that's the situation. Actions are usually taken to cause the stay violation to be stopped or remedied. No formal action was needed other than to collect attorney's fees, and that's why Judge Joukowsky awarded what Mr. Delario referred to as minimal fees. So when you take all of that into consideration, that's why I don't think it makes any difference what happens on remand in regards to whether it's an option or a marketing contract, because the record here simply does not support the contention that this was an egregious stay violation. And that kind of segues into the next issue, which is we've got three basic areas. For claim damages, emotional distress, special costs, or damages in attorney's fees. And this is an issue of first impression, and I'd like to note that I've been before the circuit on an issue of first impression on 362H. That was a while ago, but I was here on an issue of first impression on the other side where we were asserting 362H on behalf of a corporation. And the important issue that I want to state now for the issue of first impression is I think the court should either adopt the Seventh Circuit ILO standard, the district court standard in ILO, or the Stinson approach, which was one taken by Judge Ryan about a half, almost a year ago. Those are good objective approaches. I think if we were to go by the Fleet standard, which I think is the First Circuit standard, it's too broad, too wide open. I think we're just going to be inviting an awful lot of litigation. Even Judge Klein in his dissenting opinion in Stinson said leave it up to the appellate process. Well, you're going to have a lot of appellate issues or a lot of appellate litigation on that issue, I think, if you don't have a standard objective. So going back to the application of a ---- Well, let me just ---- I'm mulling over what you've said. The three that you've mentioned are certainly not identical to each other. Right. If you had to pick one, what is your best estimate of what the statute ought to mean? And certainly in some other contexts, actual damages have been read to exclude emotional distress damages altogether. Right. And is that your view of what's meant here as well, because this is a financial transaction sort of situation? I guess if I were to have to cast a vote, I would say yes. Because knowing ---- I practice bankruptcy law. So I know what happens, practically speaking, in court every day. So, you know, the legislative history isn't all that great for us to try to figure out which way we should go on it. But the important thing is to understand the practical process in the bankruptcy court. If I file a bankruptcy case, give notice to somebody and they try to garnish my wages or repossess my car or do something that they shouldn't do under 362, I can file a motion on an ex parte basis under 362H and I'll get a judge to act swiftly in making sure nothing further happens. So the vehicle of 362H is ---- well, it is a very dynamic, very significant weapon for a debtor. And I don't think you need to include emotional distress damages as part of the quote-unquote teeth that Judge Klein thought you would be taking away if you didn't follow the fleet standard. So I'm in favor of doing the financial injury test. And I'd like to say real quickly, because I am quickly running out of time here, that under any standard, even the fleet standard, which is the loosest, I don't think Judge Joukowsky abused her discretion under the facts of this case. She did not abuse her discretion on the denial of the award of special damages, $1,440 for physical therapy and $5,400 for rent, because the record clearly showed that the debtor had very significant problems financially, so it would easily be attributable to that. She didn't, I don't think, feel real comfortable with Mr. Dawson, so she would, if she had to, get him on the stand to discern whether he actually paid those sums, because no evidence was provided that he did. And lastly, in regards to the attorney's fees, this is probably the most important issue to appellants, and I think the judge did not abuse her discretion here either. She followed the allocation approach, which Judge Ryan said is okay. That's what Judge in Oakland followed. That's what he used, rather. Judge Ryan affirmed him on that. Coxson applied it. It's applicable here. And why is that? Because the judge found that the majority of the positions taken by the appellants are not meritorious. So having said all that, it looks like I made it just in time. Thank you very much. I appreciate it. You're welcome. Thank you. And you have some rebuttal time remaining if you'd like to use it. First, I would echo the Court's comments that it cannot grant relief to the bank in the nature of reversing the district court determinations because it failed to file a notice of a cross appeal in this matter. Secondly, I think it's important that one of the errors that we assert that the bankruptcy court didn't make was that the Dawsons had to somehow perform the terms of the Jamison agreement in order to not have their equitable interest divest by operation of law at the end of the 30-day period. Under California real estate law, once a party has an equitable ownership interest in the property, whether it's by deed or by marketing contract or by some other device, there's only one remedy, and that is to foreclose. In other words, if the Dawsons didn't perform to the satisfaction of the Jamisons, a matter that was solely in the discretion of the Jamisons, the Jamisons had to act as a matter of California law to divest the Dawsons of their interest in the property by foreclosing. We've cited you authorities going back to the 1800s on this point from the California Supreme Court, which, as you know, this being a matter of state law, binds this Court. I wanted to comment on some terms that have crept into this argument about the nature of the stay violation that was proven as not egregious, inadvertent, imputed knowledge of the stay. Now, I would agree that an inadvertent violation, that concept exists in the bankruptcy law, but it is limited to the situation where the bank takes action or the creditor takes action in violation of the stay when it doesn't know the stay is in effect. It is not inadvertent because the bank's bankruptcy lawyer doesn't bother to tell the bank's unlawful detainer lawyer what it's doing. In other words, the bank is trying to stand up in front of you, as it's done, as it's managed to do so far successfully in this case, and say, this wasn't a bad thing that we did because we really didn't know what was going on between the various departments of the bank. And I submit to you that when a bank or another large institutional creditor elects to compartmentalize its various functions, it has a heightened duty to make sure that the right hand of the bank knows what the left hand is doing. Counsel, do you agree or disagree with the premise that we are reviewing the attorney fee award for abuse of discretion? The court reviews the – whether or not the bankruptcy court applied the correct legal standard de novo. It reviews the factual findings on which the bankruptcy court made its attorney fee award for clear error, and then it looks – and assuming that it affirms on those two points, then it reviews the ultimate award for abuse of discretion. I've covered that, I think, in my opening brief, and I have the citations there if the court would like me to direct you to them. Now, in other – back to the question of emotional distress damages, at least in the context of other economically-based statutes like the Securities Act, we've held that actual damages do not include damages for emotional distress. Why should the bankruptcy provision be interpreted differently than that? Well, I'm a little disadvantaged because I'm not up on how to distinguish the Securities Act. I would call the rationale approach – the rationale that's been predicated – and if you'll forgive me, I see I'm about to run over my time here. The rationale that's been offered in support of the no emotional distress damages is somehow that such a claim is fabricated. Well, no, the question is what Congress meant by actual damages and whether that was limited to economic or financial losses. Well, there's no hint in the legislative history. There is no court in this land that has held it as limited to financial losses. There may be a split in the Seventh and the First about what the burden is to prove that, but nobody suggested that it's not recoverable at all because, frankly – and I would refer you to the dissent in Stinton. Individuals – where the judge points – Judge Klein, who I believe is the chief judge of the BAP, points out that individuals in bankruptcy are overwhelmingly persons of limited financial sophistication who have reached the last resort where Congress has assured them that the automatic stay will protect them for a while from the depredations of creditors. This is the fresh start. This is – creditors, leave me alone. Congress has ordained that you creditors will leave the debtor alone while the debtor gets his affairs together. And Mr. Malcolm couldn't resist telling you that Mr. Dawson had filed seven – filed five bankruptcies, but there's no suggestion in this record that he was an abusive filer. There was no sanctions. There was no attempt to dismiss. Nothing in this record shows that the Dawsons were irresponsible. In fact, they paid the bank $39,000 on this loan during the time when these proceedings were in effect. So – and they continued to pay monthly payments, commencing with the filing of this instant chapter proceeding starting in 1998 until they finally gave up and had to give the property back to the bank. So I don't know – this isn't an abusive bankruptcy situation. This isn't a situation where this Court needs to say, well, we don't trust bankruptcy judges to do their job. You know, the concept that, well, emotional distress claims are subjective or subject to fabrication. Now what we have is we have something totally subjective. And indeed, if you look at some of the cases like the Flynn case, the Court approved an award of emotional distress damages where the only emotional distress, if you will, was the fact that the creditor – the debtor was embarrassed at the checkout line because his or her credit card was refused as a result of wrongful conduct and her child's birthday party was thwarted. Thank you, Counselor. You have exceeded your time, and I think we understand your position. All right. Thank you. I appreciate your indulging me, Your Honors. And I think this judgment should be reversed. Thank you. The case just argued is submitted. And we will take a five-minute break before hearing the next case. Thank you. Thank you.
judges: Hall, Graber, Weiner